ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. GRESHAM.†

(Court of Civil Appeals of Texas. Dallas. 1911. Rehearing Denied. Nov. 4, 1911.)

1. CARRIERS (§ 320*)—NEGLIGENCE—QUESTION FOR JURY.

On the question of proper equipment of cars, it is not a sufficient answer to an issue of negligence to show that other carriers were using the same equipment, but the question must be submitted to the jury.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1179; Dec. Dig. § 320.*]

2. CARRIERS (§ 290*) — ALIGHTING PASSENGERS—DUTY OF CARRIER.

A railroad company's agents and employés must use that high degree of care to keep the steps of the cars in as reasonably safe condition as would be exercised by very prudent persons in the same circumstances.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1177; Dec. Dig. § 290.*]

3. CARRIERS (§ 320*) — PASSENGERS — INJURY WHILE ALIGHTING — NEGLIGENCE — JURY QUESTION.

In an action against a railway company for injury to a passenger while alighting, held, under the evidence, a jury question whether the platform and steps of the car were properly equipped, and whether there was negligence in permitting the steps to become muddy and slippery.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1179; Dec. Dig. § 320.*]

4. CARRIERS (§ 305*) — PASSENGERS — INJURY WHILE ALIGHTING—NEGLIGENCE.

A railway company's liability for injury to a passenger who slipped upon the car steps while alighting is not affected because the steps may have become slippery and muddy through a very recent rain.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1136; Dec. Dig. § 305.*]

5. DAMAGES (§ 132*)—PERSONAL INJURY—EXCESSIVENESS.

$6,000 is not excessive recovery for injury to a girl 17 years old who slipped on railroad car steps while alighting, resulting in severe injury to her backbone, and great pain, which continued to the time of trial; it appearing that she cannot recover within several years, if at all.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385; Dec. Dig. § 132.*]

6. TRIAL (§ 252*)—INSTRUCTIONS—REFUSAL.

Instructions submitting issues on which there is no evidence are properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 596–612; Dec. Dig. § 252.*]

7. TRIAL (§ 191*)—INSTRUCTIONS—ASSUMING FACTS.

An instruction that, if plaintiff while alighting from defendant's train, etc., slipped and fell from the car steps, and if defendant permitted the steps to become slippery and muddy, etc., plaintiff could recover, was not improper as assuming that plaintiff slipped or was injured, or that defendant was negligent.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431; Dec. Dig. § 191.*]

Appeal from District Court, Hill County; W. C. Wear, Judge.

Action by Lucile Gresham, by next friend, against the St. Louis Southwestern Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

E. B. Perkins, D. Upthegrove, Scott, Sanford & Ross, and D. C. Woods, for appellant. Frazier & Shurtleff, for appellee.

BOOKHOUT, J. This was a suit brought in the district court of Hill county by J. R. Bragg, acting as next friend for Lucile Gresham, against the St. Louis Southwestern Railway Company of Texas, appellant herein. The purpose of the suit was to recover damages on account of alleged injuries received by said Lucile Gresham while disembarking from defendant's passenger train at Hillsboro on the 11th day of July, 1910.

Plaintiff alleged in her petition that she boarded the train at Frost, in Navarro county, for Hillsboro, in Hill county; that she remained seated in the car until the train arrived at her destination; that she then, under the direction of the agent, proceeded to the car platform for the purpose of leaving the train; that when she arrived at the platform and started to descend the steps leading therefrom she found them wet and slippery, a large quantity of mud and water having accumulated thereon; and that on account of said condition of the steps she slipped and fell, striking her back against the steps, and sustaining severe and permanent injuries. The amount sued for was $25,000. Negligence was alleged on defendant's part in permitting its car steps to become wet and slippery and muddy, and in failing to have said steps equipped in such manner as to be reasonably safe for passengers in alighting from the train. Several other allegations of negligence were made in the petition, but, as they were not supported by the evidence or given in charge to the jury, their consideration is not necessary to this appeal. The defendant answered by general demurrer, general denial, special exceptions, and the plea of contributory negligence. The cause coming on for trial, a verdict was returned by the jury in plaintiff's favor for the sum of $6,000, upon which, with 6 per cent. interest, judgment was rendered on September 17, 1910. Defendant duly filed its motion for new trial and amended motion, which latter was by the court overruled and notice of appeal given. Appeal bond was duly filed and assignment of

---

errors, and the cause is now presented in this court for review and judgment.

Appellant's first assignment of error reads: "The verdict of the jury is contrary to the law and the evidence in this: That the undisputed evidence showed that defendant had used due care to keep said steps free from mud or slippery substance, and the undisputed evidence further showed that defendant had used due care in equipping said steps, so as to be reasonably safe for passengers in alighting from said train, and that said steps were equipped in the same manner as all steps on similar lines of railroad." Appellant requested a charge instructing a verdict in its favor, which was refused. In its motion for new trial, it complained of the verdict as being contrary to the law and evidence.

The court charged the jury that:

(1) "It was the duty of the defendant's agents, servants, and employés to use that high degree of care to keep the steps provided for passengers to alight from its coaches in a reasonably safe condition to so alight as would be exercised by very prudent persons under the same circumstances, and a failure to use such care would be negligence."

(2) "If you believe from a preponderance of the evidence that the plaintiff, while alighting from defendant's train, and while in the exercise of ordinary care for her own safety, slipped and fell upon the steps provided for passengers to alight from defendant's coach, and was injured as alleged in plaintiff's petition, and that the defendants, its agents, servants, or employés had permitted said steps to become slippery and muddy, and that the said defendant, its agents, servants, or employés were guilty of negligence, as the term 'negligence' is hereinbefore defined to you, in allowing said steps to become slippery and muddy, if they did do so, or if the defendant, its agents, servants, or employés failed to have said steps equipped in such manner as would be reasonably safe for passengers in alighting from said train while said steps were wet and muddy, and you further believe from a preponderance of the evidence that such failure, if any, was negligence, as the term 'negligence' is hereinbefore defined, and that such negligence, if any, was the direct and proximate cause of the plaintiff's injury, if she was injured, you will find for the plaintiff. All the other allegations of negligence in plaintiff's petition, except those submitted to you in this, the second paragraph of this charge, are hereby expressly withdrawn from your consideration."

The plaintiff, Lucile Gresham, testified as follows: "When I arrived at Hillsboro, the porter, I suppose it was, told me where to get off, and I went with the rest of the passengers towards the door indicated. When I got out on the platform steps, it had rained after we left Brandon, and the steps were wet and muddy from dirt on them, and my foot slipped, and I fell, and my back struck the step, and I fell to the ground, and Mr. Beck and Mr. Gibson, the conductor, picked me up. The lower part of my spine struck the step, and I was unconscious for a few minutes. The first thing I knew Mr. Beck and Mr. Gibson were holding me up. I fell because the steps were wet and muddy. I have seen vestibule cars where the steps were inclosed by doors; those steps were just plain board steps, and were open, and did not have any rubber, or I wouldn't have fallen. There was nothing on the steps to keep me from falling, and there was no one assisting me off." On cross-examination, she testified: "I recall that as I was getting on the train the ground was dry, and it did not rain on the train until it was between the last station and Hillsboro. Hillsboro was the first stop after it rained. There was no passengers got on or off the train anywhere after the rain until the train stopped at Hillsboro. The step was slick and muddy with dirt that was on the step. I guess that dirt come from people's shoes that had been getting on and off the train that day; anyway, there was dirt on the steps. There is a rod leading from the platform, or about two or three feet above the platform on the left, on down to the bottom step just the right height for one to hold to, if they wished to do so; and there was such a rod on that train. I don't think that I had hold of this iron rod on the left side as I went down. I am sure I did not. I didn't have hold of it, because I had just started to take my skirt with one hand, and my foot slipped. I started to take hold of my skirt to keep it from getting muddy. According to my recollection now, I am quite sure that I had passed from the platform down to the first step, and while on that my foot slipped."

On the issue as to whether the platform and steps were properly equipped, George Cabot, witness for the defendant, testified as follows: "That corrugated rubber on the steps might prevent people from slipping when they are leaving the car and the steps are wet; I don't know that it would any more than wood would. In walking on stuff that is corrugated like this block of wood, you wouldn't slip hardly as bad as you would walking on a smooth surface, not near so much. In vestibuled cars, the steps and platform are covered and protected from the weather." Bush, witness for defendant, testified as follows on cross-examination: "I mean by 'good' that it seemed to be good substantial wood. There was no rubber or brass to prevent one from slipping. I don't know whether the Cotton Belt uses that kind of cars on the main line or not, I never did notice them particularly on the main line like I did that one yesterday evening. I don't know whether they have cars with corrugated rubber on the steps on the main line; I never noticed them. I have been on

the main line. I believe they have vestibuled cars and the steps protected from the weather, and rubber on the steps to prevent one from slipping, on the main line. I don't know whether they have other kind of steps, or whether they have rubber on all the steps." Lowrey, witness for defendant, testified on cross-examination as follows: "The M., K. & T. has some vestibuled cars with rubber on the steps of its cars that it uses on its branch from here to Dallas. I don't know as to all of them, but some of them. These cars that the Cotton Belt use on its branch from here to Corsicana are the oldest style of cars in use. The latest and most improved cars are not all equipped with rubber. The cars that they use on the branch lines of the Cotton Belt are cars that have grown old, and because they have got the latest cars on the main line; they use the best on the main line, and take the old cars off and put them on the branch lines; they often do." F. C. Leyman, witness for defendant, testified as follows: "No matter where you find cars of the old class with wooden steps and in that condition, I don't suppose they are as safe steps as those with rubber on them."

[1] It is contended under different assignments, which fairly embrace the proposition that the trial court erred in submitting the case to the jury and in refusing defendant's requested charge, instructing a verdict in its favor. If there is evidence raising the issue of negligence, then the case must, under the laws of this state, be submitted to the jury. Upon the question of proper equipment, it has been repeatedly held by the courts of this state that it is not a sufficient answer to a charge of negligence to show that other roads were using the same equipment, but that these facts might go to the jury for them to determine whether, under all the facts, the company was guilty of negligence. Missouri Pac. v. Wortham, 73 Tex. 25, 10 S. W. 741, 3 L. R. A. 368; San Antonio Trac. Co. v. Flory, 45 Tex. Civ. App. 233, 100 S. W. 200. See, also, L. & N. R. Co. v. Cockrell (Ky.) 33 S. W. 407; Dougherty v. Kansas City & I. Rapid Transit Ry., 128 Mo. 33, 30 S. W. 317, 49 Am. St. Rep. 536.

[2, 3] The plaintiff was a passenger on appellant's train, and was, when injured, in the act of alighting from the car. The court correctly instructed the jury that it was the duty of appellant's agents, servants, and employés to use that high degree of care to keep the steps provided for passengers to alight from its coaches in a reasonably safe condition to so alight as would be exercised by very prudent persons under the same circumstances. The evidence was sufficient to raise the issue as to whether the platform and steps of the car were properly equipped, and whether there was negligence in permitting the steps to become muddy and slippery. There was no error in submitting the case to the jury and in refusing appellant's requested charge, instructing a verdict in defendant's favor. Missouri Pac. v. Wortham, supra; San Antonio Trac. Co. v. Flory, supra.

[4] The fact that the step may have become slippery and muddy by reason of a very recent rain is immaterial under the facts. It was the duty of appellant to maintain and keep its steps from which its passengers were to alight from its coaches in a reasonably safe condition for them to do so in safety. The degree of care to be used for this purpose was that due from a carrier to its passenger. The charge so instructing the jury was correct. Timpson v. Manhattan Ry. Co., 52 Hun, 489, 5 N. Y. Supp. 684; Ainley v. Manhattan Ry. Co., 47 Hun, 207; Weston v. New York Elevated Ry. Co., 73 N. Y. 595.

[5] It is assigned that "the verdict of the jury, in the sum of $6,000, is excessive and unconscionable in view of the evidence of the plaintiff's alleged injuries; said evidence showing that the plaintiff's injuries were of a slight and temporary character, and in no sense proportionate to the large sum accorded her by the verdict." Lucile Gresham was 17 years of age at the time she was injured. The testimony shows a severe injury to her backbone, and that she has suffered and still suffers great pain. It is not clear that her injuries are permanent, but if she ever recovers it will not be inside of several years. While the verdict is large, we cannot say that it is excessive. Railway v. Randall, 50 Tex. 254.

[6] The fifth assignment is as follows: "The court erred in refusing to give to the jury defendant's special charge No. 2, requested by defendant, which is as follows: 'You are instructed that if you believe from the evidence that the plaintiff failed to look where she was stepping, or failed to descend from said platform carefully, or failed to use any caution whatever in descending from the platform of said car, or failed to watch where she stepped, and such a failure, if any, was negligent, and such negligence contributed to her injuries, then you will find for the defendant.'" This charge was properly refused. There is no evidence in the record raising the issues sought to have submitted by said charge.

[7] It is contended that the court erred in the second paragraph of its charge to the jury in charging: "If you believe from a preponderance of the evidence that the plaintiff, while alighting from defendant's train, and while in the exercise of ordinary care for her own safety, slipped and fell from the steps provided for passengers to alight from defendant's coach, and was injured as alleged in plaintiff's petition, and that the defendants, its agents, servants, or employés had permitted said steps to become slippery and muddy, and that the said defendant, its agents, servants, or employés were guilty of negligence, as that term 'negligence' is

hereinbefore defined to you, in allowing said steps to become slippery and muddy, if they did do so, or if the defendant, its agents, servants, or employés failed to have said steps equipped in such manner as would be reasonably safe for passengers in alighting from said train while said steps were wet and muddy, and you further believe from a preponderance of the evidence that such failure, if any, was negligence, as the term 'negligence' is hereinbefore defined, and that such negligence, if any, was the direct and proximate cause of the plaintiff's injury, if she was injured, you will find for the plaintiff. All other allegations of negligence in plaintiff's petition, except those submitted to you in this, the second paragraph of this charge, are hereby expressly withdrawn from your consideration." The proposition presented is that this charge assumes the existence of facts which are put in issue by the evidence, and concerning which the evidence is in conflict. This proposition is not sustained. It was not assumed by the court in the paragraph of the charge complained of that plaintiff, while alighting from the train, slipped or was injured, or that the defendant had permitted the steps to become slippery, or had failed to have the steps equipped in a reasonably safe manner. The court in its charge submitted the issue to the jury whether or not appellee was guilty of contributory negligence in failing to hold to the handhold of the coach as she descended from the steps of the car, and the verdict embraces a finding that she was not.

The remaining assignments have been carefully considered by us, and those not disposed of by the foregoing remarks are not believed to be meritorious, and are overruled.

Finding no error in the judgment, the same is affirmed.